**Justine MILLER, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (AIRBORNE FREIGHT and Kemper Insurance Co.), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 1, 2002.

Decided Jan. 31, 2003.

Reconsideration/Reargument Denied March 31, 2003.

C. Christopher Hasson, Pittsburgh, for petitioner.

Michael A. Cohen, Pittsburgh, for respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Justine Miller appeals from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) granting Airborne Freight's (Employer) termination petition and denying Miller's review compensation and medical treatment petitions. Miller presents two questions for review: whether the Board committed an error of law in affirming the WCJ's decision to accept equivocal medical testimony from Employer's expert witness that Miller did not suffer from a medical condition and whether the Board committed an error of law in affirming when the WCJ relied on Employer's medical expert whose testimony was less than positive and not legally competent evidence.

On October 29, 1991, Miller sustained a work-related injury to her left ankle and foot while working as a courier for Employer, which accepted liability and began paying $436 in weekly benefits. Until August 1994 Employer paid all of Miller's medical expenses, but from August 1994 through March 1999 Employer made only partial payment on some bills. On August

16, 1999, Miller filed her review petitions and further indicated that the notice of compensation payable incorrectly described her medical condition. Ten days later she submitted to an independent medical examination (IME) by Dr. Betsy Blazek–O'Neill, Director of the Division of Occupational Medicine at the Allegheny General Hospital. Based on the IME, Employer filed its termination petition alleging that Miller had fully recovered and could return to work without restrictions.

During the proceedings Miller testified that in January 1992 she was diagnosed with reflex sympathetic dystrophy (RSD), a syndrome she says causes intermittent but severe pain in her left and right legs and in her left arm. Miller testified that the many treatments for her condition had not been successful, that she continues to suffer from pain to the present day and that Employer had not paid for approximately $12,000 in medical expenses to treat her condition. Miller offered the 1996 deposition testimony of Dr. Brett Stacey, Director of the Pain Evaluation and Treatment Center at the University of Pittsburgh Medical Center and one of Miller's treating physicians from July 1992 until sometime in 1995.

Dr. Stacey described RSD as a poorly understood syndrome, often arising after a minor injury to an extremity, either a foot or hand, which results in the extremity's sensitivity to touch, burning pain in the extremity, changes in skin temperature and color and changes in hair or nail growth. In some patients the symptoms will spread to other limbs. Dr. Stacey opined that Miller suffered from RSD, that her condition arose from her work-related injury, that she would always have some pain and that she could not perform the courier job duties. However, she might be able to perform some sedentary work. On cross-examination, the doctor confirmed

that during his initial July 1992 examination, Miller exhibited normal weight-bearing capacity in her left leg, improved range-of-motion in the left ankle and foot, normal strength and reflexes and no swelling or muscle atrophy. Dr. Stacey noted that a September 1992 evaluation showed that Miller could perform a variety of tasks, and in January 1995 he ordered a bone scan.

Miller also presented the deposition testimony of Dr. Chris Allen, board certified in internal medicine and a physician at the University of Pittsburgh Medical Center. Dr. Allen began treating Miller in May 1995, mainly with pain-control medications. He noted that Miller had not responded well to neurological and physical therapy treatments and that she still suffered from RSD. He opined that Miller's condition arose from her work-related injury, that she would continue to have pain and her condition would deteriorate and that she could not perform any kind of work. Dr. Allen noted that RSD symptoms could fluctuate from day to day and might not be seen during a particular examination.

Employer presented Dr. Blazek–O'Neill, who testified that during her examination she found no evidence that Miller had continuing problems related to her injury. Examination of Miller's left leg revealed no muscle atrophy, no swelling, no hypersensitivity to touch, normal reflexes, normal skin coloration and hair growth and a full range-of-motion, although objective symptoms of RSD may wax and wane. Based on the doctor's 10–to–15–minute examination of Miller and despite Miller's being treated for RSD by physicians since 1991, Dr. Blazek–O'Neill opined that Miller displayed no signs of RSD, that she had fully recovered from her injury and that she could return to work without restriction.[1] The doctor noted that no spe-

---

**1.** Dr. Blazek–O'Neill's entire IME, which in-

cluded taking Miller's history, a 10–to–15–

cific test existed to detect RSD but that a bone scan or QSART (Quantitative Sudomotor Axon Reflex) test may be helpful in making a diagnosis. In addition, Dr. Blazek–O'Neill had no reason to disbelieve Dr. Stacey's testimony concerning the objective symptoms of RSD that he noted, and she testified that Miller was taking medications for RSD at the time of the IME and was being treated by Dr. Allen on an as-needed basis. She could not state whether Miller had ever suffered from RSD, only that she currently showed no signs of having RSD.

The WCJ found the testimony of Dr. Blazek–O'Neill as the most logical, credible and persuasive, and the WCJ therefore found that Miller did not suffer from RSD at the time of Dr. Blazek–O'Neill's examination nor had Miller suffered from RSD at any time after her 1991 injury. The WCJ concluded that Miller had failed to meet her burden of showing an increase in her work-related medical condition resulting in RSD and of showing that medical expenses that should be reimbursed were related to the original work injury. Furthermore, Employer had met its burden of showing that Miller had fully recovered from her injury as of August 26, 1999. The WCJ, consequently, denied Miller's review petitions and granted Employer's

termination petition. The Board affirmed, concluding that Miller did not meet her burden of showing that she developed RSD after her 1991 injury and that the WCJ's finding of full recovery was supported by Dr. Blazek–O'Neill's testimony.[2]

■ An employer seeking a termination of benefits must prove that all disability related to the claimant's work-related injury has ceased. *Muchnok v. Workers' Compensation Appeal Board (Consolidated Coal Co.)*, 723 A.2d 257 (Pa. Cmwlth.1998) (citing *Pieper v. Ametek–Thermox Instruments Div.*, 526 Pa. 25, 584 A.2d 301 (1990)). When the claimant complains of continuing pain the employer may meet its burden through unequivocal medical testimony that the claimant is fully recovered and that no objective medical findings support the claimant's complaints or connect the complaints to the work-related injury. *Id.* When a claimant seeks payment for medical treatment and no obvious causal connection exists between the condition being treated and the original work injury, the claimant must prove the causal connection. *St. Mary's Home of Erie v. Workmen's Compensation Appeal Board (Stadtmiller)*, 683 A.2d 1266 (Pa. Cmwlth.1996). That connection must be established by unequivocal medical testimony. *See Spring Gulch Campground v.*

---

minute physical examination, review of medical records and preparation of her report, took approximately 1–1 1/2 hours. She disagreed with Miller's two treating physicians, Dr. Stacey and Dr. Allen, and with four other physicians who examined Miller. R.R. at 44a, 52a.

2. The Court's review of the Board's decision is prescribed in Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, which provides that the Court shall affirm unless it determines that the adjudication is in violation of the petitioner's constitutional rights, that it is not in accordance with law, that provisions relating to practice and procedure

of Commonwealth agencies in Sections 501–508 of the Administrative Agency Law, 2 Pa. C.S. §§ 501–508, have been violated or that any necessary finding of fact is not supported by substantial evidence. *See also Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002).

In workers' compensation proceedings, the WCJ has the authority to evaluate the evidence and to determine the credibility of witnesses, and may accept or reject any testimony in whole or in part. *Thomas Jefferson University Hospital v. Workers' Compensation Appeal Board (O'Hara)*, 745 A.2d 709 (Pa. Cmwlth.2000).

*Workmen's Compensation Appeal Board (Schneebele),* 148 Pa.Cmwlth. 553, 612 A.2d 546 (1992).

Miller first argues that the WCJ and the Board erred in relying on Dr. Blazek–O'Neill's testimony because it was equivocal and did not meet the standard established by case law for legally competent evidence. Her testimony, in short, did not provide substantial competent evidence to support the WCJ's finding that Miller did not suffer from RSD after her 1991 injury. Noting the standards established by the Pennsylvania Supreme Court, Miller recites the rule that a medical expert's testimony is less than positive when it is based on possibilities and as such is insufficient to establish a causal relationship. *Lewis v. Workmen's Compensation Appeal Board,* 508 Pa. 360, 498 A.2d 800 (1985). *See also Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas),* 77 Pa.Cmwlth.202, 465 A.2d 132 (1983).

Dr. Blazek–O'Neill expressed uncertainty over whether Miller may have suffered from RSD in the past, and in fact the doctor testified that she could not have an opinion on the matter and that Miller may have had the condition but the doctor did not know. Yet, the WCJ inexplicably credited the doctor's testimony and found it to be more persuasive than Miller's or that of her experts on this critical issue. The Court is aware of the well-settled principle that such credibility findings are within the WCJ's authority to make, but those findings also must be supported by substantial evidence in the record. *Jenkins v. Workmen's Compensation Appeal Board (Woodville State Hospital),* 677 A.2d 1288 (Pa.Cmwlth.1996). Arguing the rule enunciated in *Lewis,* Miller asserts that the WCJ committed an error of law when he accepted Dr. Blazek–O'Neill's

equivocal medical testimony to deny Miller's petitions.

When asked by Employer's attorney whether Miller ever had RSD, Dr. Blazek–O'Neill specifically stated: "I have no way of knowing that because I didn't evaluate her during the early course of her condition. So I really can't have an opinion about that. She may have, but I don't know that." Deposition of Dr. Blazek–O'Neill, at p. 35. Thus the WCJ plainly erred when he stated in Findings of Fact 11(i): "Dr. Blazek–O'Neill contended that according to the evidence, she did not believe that the claimant had reflex sympathetic dystrophy currently, *or after the injury in 1991.*" WCJ Decision, at p. 5 (emphasis added). The Court cannot discern whether, absent this error, the WCJ would have found that Miller never suffered from RSD after her injury or that she does not currently suffer from the condition. The Court's dilemma is compounded by the fact that the WCJ did not specifically find that his rejection of the testimony from Miller's medical experts formed the basis for the WCJ's finding that Miller never suffered from RSD. Moreover, the WCJ based his decision on the failure of Miller's doctors to conduct a QSART test when Dr. Blazek–O'Neill testified that no specific test was available to diagnose RSD.

■ Nevertheless, from a careful review of the record, the Court cannot determine the basis upon which the WCJ found that Miller never suffered from RSD after her 1991 injury. Absolutely no medical evidence exists to that end, be it equivocal or unequivocal, and Dr. Blazek–O'Neill's testimony does not constitute substantial competent evidence to support the finding. Consequently, this case must be remanded for the WCJ to clarify his finding that Miller never developed RSD after her 1991 injury and to make specific credibility

findings regarding the testimony from Drs. Stacey and Allen on this issue. In conjunction with the required additional fact finding, the WCJ shall determine whether the notice of compensation payable must be corrected to include RSD in the description of Miller's work-related injury and whether Employer must pay for Miller's medical expenses related to this condition. The Court shall forego further review of the merits, vacate the Board's order and remand this case for further factual findings and a new decision.

## *ORDER*

AND NOW, this *31st* day of *January* 2003, the order of the Workers' Compensation Appeal Board is vacated, and this case is remanded for the purposes indicated in the forgoing opinion.

Jurisdiction is relinquished.