SELECT SECURITY, INC., Petitioner

v.

WORKERS' COMPENSATION
APPEAL BOARD (KOBRIN),
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 20, 2006.

Decided June 30, 2006.

Marta J. Guhl, Philadelphia, for petitioner.

No appearance entered on behalf of respondent.

BEFORE: SMITH–RIBNER, Judge, and LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Select Security, Inc. (Employer) petitions for review of the order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the Workers' Compensation Judge (WCJ) who granted Employer's petition to modify workers' compensation benefits paid to Harry Kobrin (Claimant) and further ordered that Employer reimburse the litigation costs incurred by Claimant in defending against the modification petition. The questions raised by Employer include whether the Board erred in affirming the WCJ's decision to grant the modification petition but not to alter the compensation rate; whether the WCJ erred in awarding Claimant's litigation costs when he did not prevail in this matter; and whether the Board erred in determining that the WCJ's decision was supported by substantial, competent evidence of record.[1]

Claimant held concurrent employment with Employer as an outside security systems salesperson and with Wee Bee Audio (Wee Bee) as an audio equipment salesperson. On January 11, 1999, Claimant sustained a work-related injury to his left ankle in the course of his employment with Employer, which issued a temporary notice of compensation payable, later converted to a notice of compensation payable, describing Claimant's injury as left ankle sprain and setting forth an average weekly wage of $1714.24 and a weekly compensation benefit rate of $588. On March 15, 1999, Claimant returned to his sales position with Wee Bee full time; he received the maximum weekly partial disability benefits of $588.

In its February 19, 2003 notice of ability to return to work, Employer advised Claimant that Dr. Carl Ellenberger opined in a January 8, 2003 report that Claimant could return to work forty hours per week with restrictions. Employer filed its modification petition on October 2, 2003 seeking to reduce Claimant's compensation benefits because work generally was available as of January 8, 2003. Claimant replied that he was restricted to working on a modified basis five to six hours per day,

---

1. By order dated January 12, 2006, the Court precluded Claimant from filing a brief or participating in oral argument in this matter due to his failure to comply with a prior order directing him to file a brief.

five days per week. Employer submitted a surveillance videotape and an affidavit of its former owner stating that Employer ceased to exist as of February 27, 2003 and that no work was available to Claimant since February 19.

Employer presented the deposition testimony of Dr. Ellenberger, who first examined Claimant on January 29, 2002 and diagnosed him with chronic pain syndrome. Dr. Ellenberger testified that the videotape showed Claimant walking without a limp, that no objective findings existed to correlate with his subjective complaints and that he should increase his activities. Dr. Ellenberger saw no problem with Claimant's working sixty hours per week, and he agreed that the sales jobs listed in a job analysis prepared by Employer's vocational manager were within Claimant's physical capability. Dr. Ellenberger conceded that as of October 28, 2003, he continued to restrict Claimant to working forty hours per week and to standing, walking and driving three to five hours per day.

Employer's vocational manager, Mary McGuire, interviewed Claimant to determine his residual earning power, and she performed a labor market survey/earning capacity assessment on August 26, 2003 based on Claimant's transferable skills and the restrictions imposed by Dr. Ellenberger. McGuire stated in her report that Claimant's employment background is heavily concentrated in the sales area, particularly audio products, security systems and men's clothing. McGuire listed available jobs in Claimant's geographic area: (1) an automobile salesperson job with Faulkner Isuzu ranging from $30,000 to $60,000 per year based on salary plus commissions; (2) an automobile salesperson job with Lancaster County Motors ranging from $36,000 to $70,000 per year depending upon commissions; and (3) a window

salesperson job with Appleby Systems ranging from $40,000 to $60,000 per year based on salary and commissions. McGuire detailed a sales representative job with Yarnell Security, similar to Claimant's pre-injury job, with compensation ranging from $50,000 to $100,000 per year. She testified that Claimant could earn more by selling a different product line, at least in the range of $50,000 to $60,000 per year and likely more.

Claimant testified that he continued to have ongoing pain in his left ankle for which he treated with Dr. Mark Perevous and Dr. Scott Muraika and that he earned $500 to $600 working forty to forty-two hours per week as Wee Bee's sales manager, which was the maximum he could handle. Dr. Perevous diagnosed Claimant with left ankle instability accompanied by irritation of the superficial peroneal nerve. He testified that Claimant's surgery on July 3, 2000 corrected the ligament damage but did not address the nerve irritation and that he continued to experience symptomology associated with the superficial peroneal nerve, including burning pain, tingling and intermittent numbness. Claimant was restricted to working five to six hours per day, five days per week with no overtime, and although the jobs that Employer relied upon would be appropriate Dr. Perevous opined that Claimant should work part-time only.

The WCJ found Claimant's testimony credible and found that it was not sufficiently refuted by the surveillance videotape of short duration. The WCJ also found credible Dr. Perevous' diagnosis and his testimony regarding Claimant's ongoing ankle problems. The WCJ rejected Dr. Perevous' testimony restricting Claimant to working five to six hours per day and rejected as cavalier and unpersuasive Dr. Ellenberger's testimony that Claimant should work sixty hours per week despite

his discomfort. Rather, the WCJ found that Claimant was capable of working forty hours per week, and as to his earning capacity the WCJ specifically found as follows:

37. This Judge finds the testimony of Mary McGuire to be credible, as it was not rebutted by contrary vocational testimony. However, this Judge rejects as unpersuasive her testimony concerning Claimant's earning capacity based on the potential compensation for each of these jobs. The salary range for each of the jobs in the Labor Market Survey is based upon commission, and Claimant has no experience in selling windows or automobiles. There is no guarantee that these jobs would pay Claimant even in the lower range, as described by Ms. McGuire. Therefore, this Judge rejects that Claimant has [an] earning capacity of $50,000.00 to $60,000.00. Rather, this Judge finds that Claimant has an earning capacity of $39,000.00 a year, ($750.00/week) which is the average of the low end salary for each of the four jobs upon which Ms. McGuire relies.

The WCJ concluded that Employer established Claimant's weekly earning capacity of $750 as of August 26, 2003, the date of McGuire's evaluation, and that even with the increased earning capacity, Claimant still was entitled to the maximum weekly compensation rate of $588. Furthermore, Claimant was entitled to litigation costs because he was successful in part in defending the modification petition as his benefits were not modified to the extent sought. The WCJ initially denied the petition and ordered Employer to pay $2,430.05 in litigation costs, but on October 14, 2004 he amended the order to grant the petition and to add that "Claimant has an earning capacity of $750.00 per week."

The Board affirmed, concluding that substantial, competent evidence supported the WCJ's decision.

▇▇▇ Section 306(b)(2) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512(2), provides in relevant part:

"Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth.

Under Section 306(b)(2), an employer seeking to modify a claimant's disability benefits must offer the claimant a specific available job that the claimant is capable of performing or establish the claimant's earning power through expert opinion evidence. *See Allied Prods. & Servs. v. Workers' Compensation Appeal Board (Click)*, 823 A.2d 284 (Pa.Cmwlth.2003). The assessment of a claimant's earning power is a question of fact to be determined by the WCJ. *309 Nissan v. Workers' Compensation Appeal Board (Horowitz)*, 819 A.2d 126 (Pa.Cmwlth.2003).

▇▇▇ Employer argues that the WCJ erred in granting the modification petition without altering Claimant's compensation rate.[2] The WCJ did not credit McGuire's

2. The Court's review is limited to determining whether constitutional rights were violated, an error of law was committed, a practice or procedure of the Board was not followed or

assessment of a $50,000 to $60,000 per year earning capacity for Claimant. She admitted that commissions from the positions that Employer relied upon are "based upon the individual's ability to sell on a commission basis the product." McGuire Deposition, p. 37. The WCJ additionally noted that Claimant had no experience in selling windows or automobiles and that no guarantee existed that the identified jobs by McGuire would pay Claimant even at the lower range. Rejecting a $50,000 to $60,000 earning capacity, the WCJ determined instead that it was $39,000 per year based on an average of the low end salary for each of the jobs. Upon review of the decision, "it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ, rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding." *Hoffmaster v. Workers' Compensation Appeal Board (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa.Cmwlth. 1998). Upon review, the Court concludes that the WCJ's determination of Claimant's earning capacity is supported by substantial evidence in the record.

Employer nonetheless relies on *309 Nissan* to argue that this Court has determined that a modification of compensation benefits was appropriate when a claimant was physically capable of returning to a sales position and no evidence existed to show that his commissions would have been affected by the work injury. In *309 Nissan* the employer filed a suspension petition alleging that the claimant had recovered from the work injuries and that he failed to respond in good faith to the employer's offer to return to the pre-injury car sales position without wage loss. The WCJ granted the petition finding that "no credible evidence of record exists indicating that Claimant's commission earnings would be affected by his injuries in his return to his *pre-injury* position." *309 Nissan*, 819 A.2d at 130 (emphasis added). In affirming, the Court noted that "[w]hen dealing with a return to a pre-injury commission-based position, a potential post-injury *wage loss* is irrelevant in the face of a finding that no *earning power loss* exists that is related to a claimant's work-related injury." *Id.* (emphasis in original). The case *sub judice* is factually distinguishable in that Employer did not base the petition on an offer for Claimant to return to his *pre-injury* job. Unlike *309 Nissan* the WCJ rejected Employer's evidence here that Claimant had a $50,000 to $60,000 earning capacity.

■ Employer next argues that the WCJ erred in awarding litigation costs when Employer was successful in establishing an increase in Claimant's earning capacity to $750 per week. Section 440(a) of the Act, added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 996(a), authorizes the WCJ to award reasonable litigation costs to a claimant in whose favor a matter at issue is finally determined in whole or in part. *Jones v. Workers' Compensation Appeal Board (Steris Corp.)*, 874 A.2d 717 (Pa.Cmwlth.2005). Employer relies, however, upon *Saunders House v. Workmen's Compensation Appeal Board (Russell)*, 156 Pa.Cmwlth.505, 628 A.2d 488 (1993), where the employer's modification petition was granted and benefits were

the findings of fact are supported by substantial evidence in the record. *Matticks v. Workers' Compensation Appeal Board (Thomas J. O'Hora Co., Inc.)*, 872 A.2d 196 (Pa.Cmwlth. 2005). The questions of credibility and weight of the evidence are within the exclusive province of the WCJ, who is free to accept or reject the testimony of any witnesses in whole or in part. *Miller v. Workers' Compensation Appeal Board (Airborne Freight)*, 817 A.2d 1200 (Pa.Cmwlth.2003).

reduced, but the employer was ordered to pay litigation costs. In *Saunders* the employer questioned before this Court whether litigation costs were properly awarded to the claimant when the modification petition was granted. The Court noted that Section 440 of the Act allows for litigation costs in contested cases involving a modification petition that is resolved in whole or in part in favor of the claimant. Nevertheless, it concluded that because the case was resolved in the employer's favor and not claimant's, he was not entitled to litigation costs.

The WCJ awarded all litigation costs incurred by Claimant because he successfully defended the modification petition in part when his benefits were not reduced to the extent that Employer requested. By contrast, the WCJ concluded that Employer proved that Claimant had an earning capacity of $750 per week, or in excess of his current actual earnings. Employer contends that the decision was in its favor because it obtained the increase in earning capacity and therefore would not have to pay total disability benefits if Claimant ceased working for Wee Bee.

Evidently both parties prevailed in part on the matter at issue. In any event, this Court has held that it will not interfere with a WCJ's discretionary award of litigation costs when they are found to be *reasonable. See Jones* (citing *Braun Baking Co. v. Workmen's Compensation Appeal Board (Stevens)*, 136 Pa.Cmwlth.499, 583 A.2d 860 (1990)). There was no finding by the WCJ in this matter as to the reasonableness of the litigation costs incurred by Claimant, and for that reason a remand is required for the WCJ to make the necessary findings. The question of whether Claimant's litigation costs are reasonable obviously is one of fact for the WCJ to determine. As such, this question may not be decided by the Court as a matter of law as Employer suggested.

Finally, nothing in the record indicates that the WCJ capriciously disregarded the evidence presented by Employer or that the WCJ substituted his own opinion regarding Claimant's earning capacity. As the fact finder, the WCJ may reject even uncontradicted testimony. *Hoffmaster.* Accordingly, pursuant to its review, the Court has concluded that the WCJ's determination of Claimant's earning capacity was based upon his credibility findings and, therefore, was supported by substantial evidence in the record. As to the award of litigation costs, the Court vacates that part of the Board's order affirming the WCJ on this issue and remands this matter for the necessary findings as to the reasonableness of the litigation costs incurred by Claimant and what amount of those costs should be awarded to him. *See Jones.* The Court otherwise affirms the Board's order.

### ORDER

AND NOW, this 30th day of June, 2006, the Court vacates in part the order of the Workers' Compensation Appeal Board affirming the award of litigation costs to Harry Kobrin, and remands this matter for purposes consistent with the foregoing opinion. The Court affirms the Board's order in all other respects.

Jurisdiction is relinquished.

DISSENTING OPINION BY Judge LEADBETTER.

I agree entirely with the well-reasoned opinion of the majority. However, since employer has not contested the reasonableness of the costs awarded, but only whether it was proper to make any such

award at all, I would not remand, but would simply affirm.