IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lower Moreland Township,      :
              Petitioner      :
     :
     v.      :   No. 262 C.D. 2022
     :
John MacDonald (Workers'      :
Compensation Appeal Board),      :
              Respondent      :   Submitted: August 19, 2022

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE CEISLER                         FILED: December 19, 2022

Lower Moreland Township (Employer) petitions this Court for review of the March 16, 2022 order of the Workers' Compensation Appeal Board (Board), affirming the decision of a workers' compensation judge (WCJ) that assigned John MacDonald (Claimant) a weekly earning power of $834.20. The issue on appeal is whether the WCJ miscalculated Claimant's earning power. After review, we affirm.

## I. Background

Claimant suffered a work injury on February 24, 2014, while employed as a police officer. Certified Record (C.R.), Item No. 30. Employer accepted the work injury through issuance of a notice of compensation payable (NCP), which described Claimant's injury as a contusion and strain/sprain of his back and right ankle and foot. *Id.* Claimant received total disability benefits in the amount of $932 per week based on an average weekly wage (AWW) of $1,786.94. *Id.* Following Claimant's receipt of pension benefits in 2016, his weekly disability benefit was reduced by

$56.31. C.R., Item No. 22. On May 1, 2018, the parties executed a third-party agreement granting Employer a subrogation interest in Claimant's receipt of a third-party settlement. C.R., Item No. 29.

On June 28, 2019, Employer filed a petition to modify Claimant's benefits based on an earning capacity and labor market survey (LMS) performed by Michael Smychynsky, a certified rehabilitation counselor, which determined that Claimant had an earning capacity of at least $1,538 per week. C.R., Item No. 2. Claimant denied the allegations and filed a review petition seeking to amend the description of his work injury to include a herniated disc at L5-S1. *Id.*, Item Nos. 4, 5. Employer admitted the allegations in Claimant's review petition, thereby acknowledging that Claimant's work injury included the additional diagnosis. *Id.*, Item No. 7.

In support of its modification petition, Employer presented the deposition testimony of Dennis McHugh, D.O., who conducted an independent medical examination (IME) of Claimant, and Mr. Smychynsky.[1] Claimant presented his testimony from a May 7, 2019 deposition and the deposition testimony of his treating physician, Gene Salkind, M.D. Claimant also testified live during a July 23, 2020 hearing before the WCJ.

## A. Employer's Evidence

Dr. McHugh examined Claimant on February 7, 2019. C.R., Item No. 27, McHugh Dep., 2/7/19, at 8. At that time, Claimant advised Dr. McHugh that he was not receiving any treatment related to his work injury, or regularly taking any medication to treat his residual symptoms, which consisted of pain over the center

---

[1] Employer also presented the testimony of its township manager, Christopher Hoffman, who related that Employer had no positions within Claimant's physical, educational, and vocational abilities. Mr. Hoffman's testimony, which the WCJ credited, is not relevant to our disposition of this matter and we need not summarize it further.

of his lower back that radiated into his right leg. *Id.* at 11-12. Claimant would occasionally use Aleve for pain. *Id.* at 12. During Dr. McHugh's physical examination, Claimant exhibited tenderness in his lower back, and he felt some tightness in his right hamstring when bending forward. *Id.* at 13-14. The result of Claimant's straight leg raise test was normal, as were the results of Claimant's strength and manual muscle testing. *Id.* at 14-16.

Dr. McHugh opined that Claimant sustained a small, right-sided L5-S1 disc herniation as a result of the February 24, 2014 work injury. *Id.* at 19. While Dr. McHugh did not believe that Claimant had fully recovered from his work injury, he felt Claimant could return to work in a modified capacity, with Claimant restricted to lifting no more than 20 pounds and carrying objects weighing no more than 10 pounds. *Id.* at 19-20. Dr. McHugh approved five positions for which Mr. Smychynsky prepared detailed job analyses as falling within Claimant's physical restrictions. *Id.* at 20-21. Detailed job analyses were not provided for 12 additional positions identified in the LMS; however, on the day he testified, Dr. McHugh was provided the name of each employer, the relevant job title, and whether the position was considered light, medium, or heavy duty. *Id.* at 21, 25. Dr. McHugh believed those positions also complied with Claimant's restrictions. *Id.* at 21.

Mr. Smychynsky testified that he prepared Claimant's LMS after reviewing Dr. McHugh's IME report, Claimant's educational, occupational, and medical history, as well as his daily activities and interest.[2] C.R., Item No. 25, Smychynsky Dep., 2/7/19, at 9, 13, 21. Based on the documentation he reviewed, Mr. Smychynsky opined that Claimant possessed transferable skills that would allow

---

[2] Mr. Smychynsky was unable to schedule a vocational interview with Claimant; however, he derived the necessary information from Claimant's deposition testimony. Smychynsky Dep. at 11-12.

3

him to work in a variety of occupations, with an entry-level earning capacity "up to approximately $80,000 per year," resulting in an AWW of $1,538. *Id.* In identifying suitable positions, Mr. Smychynsky focused primarily on Claimant's training and experience in law enforcement and his ability to interact with the public, skills that Mr. Smychynsky felt applied to sales-based positions. *Id.* at 20, 27. Mr. Smychynsky provided complete job analyses for 5 of the 17 positions he identified in the LMS, which he based on information directly received from each employer. *Id.* at 30-31. As to those five positions, Mr. Smychynsky felt they were unquestionably appropriate, and any modifications required would be within Dr. McHugh's restrictions.[3] *Id.* at 33. While Mr. Smychynsky spoke to each employer for the 17 positions listed in the LMS, he did not see all those jobs performed "in person." *Id.*

Mr. Smychynsky acknowledged that automobile sales positions are commission-based, although "[m]ost of the" sales positions he reviewed also offered "a weekly or monthly guarantee." Smychynsky Dep. at 34. An individual "who really hustles . . . can easily make over $100,000 per year." *Id.* at 35. Although one of the automobile sales positions paid "up to $100,000" per year, with commissions and incentives, Mr. Smychynsky considered that amount of compensation an "outlier," and he felt that $80,000 per year was a "more reasonable LMS" of what Claimant could earn in the industry. *Id.* at 39-40. During cross-examination, Mr. Smychynsky admitted that, to his knowledge, Claimant had never held any of the

---

[3] The five positions were identified as follows: dispatcher for Universal Atlantic Systems, which paid $16-$17 dollars per hour, security surveillance with Sugarhouse Casino, with a starting salary of $48,000-$52,000 per year, telecommunicator with Montgomery County, which offered a starting salary of $35,605, sales representative with Professional Sports Publications, which paid a base salary of $40,000, plus commissions, and an automobile sales position with Del Chevrolet that paid a base salary, plus commissions, ranging from $60,000-$100,000 per year. C.R., Item No. 25, Ex. 6.

positions identified in the LMS, or any type of commission-based job. *Id.* at 47. As of June 25, 2019, all 17 positions were open and available. *Id.* at 57.

**B. Claimant's Evidence**

Claimant acknowledged that he no longer took medication or received physical therapy to treat the symptoms from his work injury. C.R., Item No. 23, Claimant Dep., 5/7/19, at 9. He can shower, dress, and groom himself, and he performs chores around the house and runs errands. *Id.* at 30-31. Claimant admitted that, since his work injury, he has not attempted to return to the workforce. *Id.* at 34. Of the skills required of a police officer, Claimant stated that the ability to communicate was "absolutely" important, and that, through his job with Employer, Claimant developed a good work ethic, and good social skills and investigative techniques. *Id.* at 14-15. During his subsequent testimony on July 23, 2020, Claimant stated that he had never held a commission-based job or worked in sales or as a customer-service representative. C.R., Item No. 17, Notes of Transcript (N.T.), 7/23/20, at 16-17.

In his March 4, 2020 deposition, Dr. Salkind testified that he first examined Claimant on September 29, 2014. C.R., Item No. 19, Salkind Dep., 3/4/20, at 10. Based on Claimant's diagnostic studies and a physical examination, Dr. Salkind diagnosed Claimant with L5-S1 disc herniation with associated right S1 radiculopathy. *Id.* at 14. Despite surgery performed to address Claimant's condition, Claimant continued to experience right-sided radiculopathy. *Id.* at 16. At Dr. Salkind's most recent evaluation on October 17, 2019, Claimant advised he treated his symptoms with Aleve, as needed. *Id.* During that examination, Claimant expressed right leg pain during the straight leg raise test. *Id.* at 16. Otherwise, Claimant's examination was normal. *Id.* Dr. Salkind felt that Claimant could return

to work of a sedentary nature. *Id.* at 19. He felt that light duty was excessive, considering Claimant's condition, which Dr. Salkind opined was permanent. *Id.* at 20. Dr. Salkind agreed that he did not treat Claimant between February 1, 2018, and October 21, 2019. *Id.* at 24.

### C. WCJ's Decision

In a decision circulated on June 29, 2021, the WCJ credited Claimant's testimony regarding his physical limitations to the extent they were consistent with the opinions of Dr. McHugh, whose testimony the WCJ accepted in its entirety. Finding of Fact (F.F.) Nos. 15-16. Based on his observation of Claimant during his testimony, and Claimant's educational and vocational background, the WCJ found that Claimant was well-suited for work in customer-oriented occupations, such as sales. F.F. No. 15.

The WCJ accepted Dr. Salkind's testimony, except where it conflicted with Dr. McHugh's testimony, as Dr. Salkind had not actively treated Claimant since February 2018, and he only examined Claimant once thereafter, on October 21, 2019. F.F. Nos. 16, 19. At that time, Dr. Salkind did not prescribe Claimant additional treatment. *Id.* Claimant acknowledged that he has not treated for his lower back condition since February 2018, and that he performs a variety of activities that comport with Dr. McHugh's assessment of Claimant's ability to work. F.F. No. 16. Dr. McHugh's physical examination of Claimant revealed no substantial physical abnormalities, findings that were "virtually identical" to Dr. Salkind's. *Id.*

The WCJ credited Mr. Smychnysky's opinion regarding Claimant's vocational aptitude and the five positions he located for Claimant that Dr. McHugh specifically approved. F.F. No. 18. He rejected, however, Mr. Smychnysky's

6

opinion that Claimant could earn up to $100,000 in an entry-level automobile sales position. *Id.* Given that Claimant had never worked in sales, the WCJ found Mr. Smychnysky's opinions unpersuasive and speculative as to the amount of commissions Claimant could earn. *Id.* The WCJ found it credible that Claimant could earn $60,000 in an entry-level position with Del Chevrolet. *Id.* Regarding the additional 12 positions identified in the LMS, the WCJ noted that Dr. McHugh reviewed those job descriptions, without further details, on the date of his deposition. F.F. No. 16.

Accordingly, the WCJ found that Claimant was capable of working in a full-time, light-duty capacity, and that five positions were available within Claimant's geographic location that met his physical, educational, and vocational capabilities. F.F. No. 21. After averaging the weekly compensation for those five positions, the WCJ found that Claimant had an earning capacity of $834.20 per week. F.F. No. 22. Because Employer admitted that the description of Claimant's work injury included a disc herniation at L5-S1, the WCJ amended the NCP accordingly. F.F. No. 6; Conclusion of Law (C.L.) No. 2. The WCJ declined Claimant's request for reimbursement of litigation costs. F.F. No. 24.

Employer appealed to the Board, arguing that the WCJ erred in failing to consider all 17 positions identified in the LMS, that the WCJ incorrectly calculated Claimant's earning capacity, and that the WCJ failed to issue a reasoned decision. C.R., Item No. 9. The Board rejected Employer's arguments and affirmed the WCJ, as the WCJ explained why he credited or rejected the evidence. C.R., Item No. 13 at 19. Dr. McHugh approved five positions in the LMS, for which Mr. Smychynsky provided detailed job analyses. *Id.* at 12. As for the remaining 12 positions, Dr. McHugh was only able to briefly review those job descriptions just prior to his

7

deposition testimony. *Id.* The Board also agreed with the WCJ's conclusion that Mr. Smychynsky overestimated Claimant's earning capacity in a commission-based position for which he had no experience. *Id.* at 7. Finally, the Board concluded that the WCJ did not err in calculating Claimant's earning capacity, as that issue is a question of fact for the WCJ, and the WCJ's findings were supported by substantial evidence. *Id.* at 5, 16.[4] This appeal followed.[5]

## II. Issues

On appeal, Employer argues that, when calculating Claimant's earning capacity, the WCJ misapprehended and disregarded the evidence and ignored the plain language in Section 306(b)(2) of the Act.[6]

## III. Discussion

Section 306(b) of the Act, 77 P.S. § 512, establishes the schedule of compensation for partial disability. An employer seeking to modify a claimant's benefits under Section 306(b)(2) of the Act must either offer the claimant a specific, available job that he can perform or establish the claimant's earning power through expert opinion evidence. *Select Sec., Inc. v. Workers' Comp. Appeal Bd. (Kobrin)*,

---

[4] Claimant also appealed the WCJ's decision, arguing that the WCJ erred in failing to award him litigation costs. C.R., Item No. 11. The Board affirmed the WCJ on this issue, as Employer admitted that Claimant's work injury included a disc herniation at L5-S1, and, therefore, Claimant did not prevail on any contested issue. C.R., Item No. 13. Claimant did not appeal the Board's order.

[5] Our review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, and whether necessary findings of fact are supported by substantial evidence. *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 331 n.2 (Pa. 2000). Substantial evidence is relevant evidence that a reasonable mind would deem adequate to support a conclusion. *Iacono v. Workers' Comp. Appeal Bd. (Chester Housing Auth.)*, 624 A.2d 814, 817 (Pa. Cmwlth. 1993).

[6] 77 P.S. § 512(2).

901 A.2d 1129, 1132 (Pa. Cmwlth. 2006). The assessment of a claimant's earning power is a question of fact to be determined by the WCJ. *Id.* "Earning power" under Section 306(b)(2) of the Act is determined by the work a claimant is capable of performing and job availability "in the usual employment area." 77 P.S. § 512(2).

Employer argues that the WCJ misapprehended Mr. Smychynsky's testimony that Claimant could earn an entry level salary of $100,000 in automobile sales, that the WCJ improperly rejected Mr. Smychynsky's salary estimations as speculative and inflated, and that the WCJ should have based Claimant's earning power on all 17 positions identified in the LMS.[7] Finally, Employer argues that the WCJ ignored the plain language of Section 306(b)(2) when he calculated Claimant's earning power by averaging the salaries for the five positions approved by Dr. McHugh. Employer asserts that, at a minimum, the WCJ should have based Claimant's earning power on the $60,000 entry-level salary with Del Chevrolet.

First, we will address Employer's arguments that the WCJ misapprehended or disregarded the evidence. The WCJ is the ultimate finder of fact and exclusive arbiter of credibility and evidentiary weight. *LTV Steel Co., Inc. v. Workers' Comp. Appeal Bd. (Mozena)*, 754 A.2d 666, 676 (Pa. 2000). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness, and the WCJ is not required to accept even uncontradicted evidence. *Newcomer Prod. v. Workers' Comp. Appeal Bd. (Irvin)*, 826 A.2d 69, 74-75 (Pa. Cmwlth. 2003). So long as the findings of the WCJ are supported by substantial evidence, they must be accepted as conclusive on appeal. *Id.* It does not matter that the record supports a contrary

_____

[7] While Employer raises multiple issues for this Court's consideration, several issues overlap, and all but one concern the WCJ's determinations with respect to Mr. Smychynsky's testimony and the LMS. As a result, we have consolidated and reordered the issues for the sake of clarity and efficiency.

finding; the pertinent inquiry is whether there is substantial evidence to support the findings made. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1988).

Employer argues that the WCJ mischaracterized Mr. Smychynsky's testimony when he rejected Mr. Smychynsky's opinion that Claimant could earn up to $100,000 in automobile sales as speculative and unpersuasive. In fact, Mr. Smychynsky testified that a salary of $100,000 was "an outlier" and $80,000 was a more reasonable estimate of what Claimant could earn as an entry-level automobile salesman. As a result of this misapprehension of the evidence, Employer requests that this Court remand this matter for a recalculation of Claimant's earning power.

Employer is correct that Mr. Smychynsky testified $100,000 for an entry-level sales position was "a little bit of an outlier[.]" C.R., Item No. 25, Smychynsky Dep. at 40. Mr. Smychynsky also stated that some dealerships "identified [$100,000 per year] as a very reasonable goal to attain[.]" *Id.* Furthermore, the LMS Mr. Smychynsky prepared clearly indicates that the position with Del Chevrolet paid a salary ranging from $60,000-$100,000 per year, with an average of $80,000, annually. C.R., Item No. 25, Ex. 5. Mr. Smychynsky's detailed job analysis for that position likewise indicates it would pay a "[b]ase salary + commissions of $60,000-$100,000/ year[,]" with an average salary of $80,000 per year. *Id.*, Ex. 6. Another position Mr. Smychynsky located and included in the LMS, "auto sales consultant," paid a range of $50,000-$100,000 with commissions and incentives. *Id.*, Ex. 5. As the record supports the WCJ's finding that Mr. Smychynsky opined Claimant could earn up to $100,000 in automobile sales, we reject Employer's argument that the WCJ somehow misapprehended the evidence or mischaracterized Mr. Smychynsky's testimony.

10

In a similar vein, Employer argues that the WCJ erred in rejecting Mr. Smychynsky's salary estimates as speculative and unpersuasive, because Mr. Smychynsky's calculations recognized Claimant's lack of sales experience and Claimant presented no evidence to contradict the data or opinions expressed in the LMS. Therefore, Employer contends that the WCJ's findings are a "legal nullity," as they fail to consider evidence relating to the "substantial commissions" Claimant could have earned in automobile sales. Employer's Br. at 39.

As we have already discussed, Mr. Smychynsky indicated that Claimant could earn up to $100,000 with two of the positions listed in the LMS. Mr. Smychynsky felt that $80,000 per year was a "more representative sample of what" Claimant could earn in his first year of sales. *Id.* Although the WCJ did not explicitly discredit Mr. Smychynsky's testimony in this regard, the WCJ did so implicitly by finding that, given Claimant's lack of sales experience, Claimant could earn an entry-level salary of $60,000 with Del Chevrolet, a sum identified in Mr. Smychynsky's LMS and the detailed job analysis he prepared for Del Chevrolet. As the ultimate finder of fact, the WCJ may accept or reject, in whole or in part, the testimony of any witness, even that which is uncontradicted, and this Court may not overturn his findings if they are supported by substantial evidence. The WCJ's finding that Claimant could earn $60,000 in automobile sales does not lack support in the record simply because Employer feels he could earn more. This Court came to a similar conclusion in *Select Sec., Inc.*, in which we upheld a WCJ's determination that, where a claimant had no prior sales experience, his earning power should be based on an average of the "low end" for each salary identified in a LMS. *Select Sec., Inc.*, 901 A.2d at 1133.

11

Employer's argument that the WCJ erred in failing to consider all 17 positions identified in the LMS is similarly unpersuasive. In crediting Dr. McHugh's testimony, the WCJ explained that Dr. McHugh reviewed and approved the five job descriptions sent to him by Mr. Smychynsky. The job analysis Mr. Smychynsky prepared for each of these positions was based on information he directly received from the employer and included information pertaining to the specific physical requirements of the position, such as the amount of standing, sitting, walking, and driving required, whether the position involved activities such as kneeling, stooping, or reaching, and the type of equipment and tools used for the position. C.R., Item No. 25, Smychynsky Dep., Ex. 5. Dr. McHugh was not provided similar analyses for the remaining 12 positions. For these positions, Dr. McHugh was only apprised, just prior to his deposition, of the employer's name, the job title and salary, and whether the position entailed light or sedentary work. *Id.*, Ex. 6. It was within the WCJ's purview to give greater weight to those positions for which Mr. Smychynsky provided detailed analyses, and we will not overturn that determination on appeal.

Finally, Employer argues that the WCJ calculated Claimant's earning power in contravention of Section 306(b)(2) of the Act, which requires a determination of a claimant's "earning power," not an "average earning power." Employer's Br. at 47. Therefore, by averaging the estimated salaries for the five positions Dr. McHugh approved prior to his deposition, the WCJ failed to determine Claimant's earning power under Section 306(b)(2). Employer contends that, at a minimum, the WCJ should have based Claimant's earning power on the $60,000 he found Claimant could earn from Del Chevrolet. In support of its argument, Employer cites *Kurtiak v. Workmen's Compensation Appeal Board (Western Sizzlin' Steakhouse)*, 635 A.2d 732 (Pa. Cmwlth. 1993), in which this Court held that a WCJ erred in basing a

12

claimant's earning power on a part-time position when a full-time position within the claimant's limitations was also open and available. Employer interprets *Kurtiak* as mandating that a WCJ base a claimant's earning power on the open and available position providing the greatest degree of earning power.

In *Kurtiak*, a workers' compensation referee[8] modified a claimant's benefits based on an available part-time position that was within the claimant's physical limitations. On appeal, the employer argued that the referee erred in failing to consider a full-time position that was also found to be available and within the claimant's capabilities. This Court agreed, as partial disability payments under Section 306(b) are based upon the difference between the wages the employee earned at the time of injury and the employee's earning power after the injury. Because the referee found that the claimant was approved for full-time employment, the claimant's earning power should have been based on the full-time position. Employer's reliance on *Kurtiak* is misplaced, as our disposition in that matter did not address whether a WCJ could calculate a claimant's earning power by averaging the salaries of several positions.

Employer also relies on *Marx v. Workers' Compensation Appeal Board (United Parcel Service)*, 990 A.2d 107, 110 (Pa. Cmwlth. 2010), in which we rejected a claimant's contention that a WCJ should have based her earning power on the average of all salaries identified in an LMS. Our holding in *Marx* does not prohibit such a calculation, however. Rather, we noted that the assessment of a claimant's earning power was a question of fact for the WCJ and an LMS indicating that the claimant could earn a range of salaries from $140 to $376.60 per week

---

[8] The Act of July 2, 1993, P.L. 190, changed the term "referee" to "workers' compensation judge."

13

constituted substantial evidence supporting the WCJ's finding that the claimant could earn the highest salary in that range. *Id.* at 111.

## IV. Conclusion

We discern no legal error in the WCJ's calculation of Claimant's earning power and the WCJ's findings are supported by substantial evidence. Accordingly, we affirm the Board's order.

_____
ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lower Moreland Township,     :
               Petitioner     :
                          :
     v.                  : No. 262 C.D. 2022
                          :
John MacDonald (Workers'     :
Compensation Appeal Board),     :
               Respondent     :

# O R D E R

AND NOW, this 19th day of December, 2022, the March 16, 2022 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____

ELLEN CEISLER, Judge