IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Salvatore Taibi, : 
                Petitioner : 
         : 
         : 
       v. : No. 1017 C.D. 2021
         : 
Borough of Slatington and Employers : 
Mutual Casualty Company (Workers' : 
Compensation Appeal Board), : 
               Respondents : Submitted: November 23, 2022

BEFORE:    HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE CEISLER                               FILED: March 3, 2023

Salvatore Taibi (Claimant) petitions this Court for review of the August 25, 2021 order of the Workers' Compensation Appeal Board (Board), affirming the decision of a workers' compensation judge (WCJ) that modified Claimant's workers' compensation wage loss benefits based on Claimant's ability to return to work and the availability of a position within Claimant's physical restrictions. Claimant argues on appeal that the position offered was not within his physical restrictions and that the position was only available for a short period of time and, therefore, the WCJ erred in modifying his wage loss benefits. After review, we affirm the Board.

## I. Background

Claimant suffered a work injury to his right knee and lower back on July 20, 2012, while working as a police sergeant for the Borough of Slatington (Employer),

which Employer accepted through issuance of a Notice of Compensation Payable (NCP). Certified Record (C.R.), Item No. 53, NCP. Based on the opinion of S. Ross Noble, M.D., who performed independent medical examinations (IME) of Claimant on May 15, 2018, and October 15, 2019, that Claimant could return to work in a sedentary capacity, Employer issued a Notice of Ability to Return to Work on November 19, 2019. C.R., Item No. 42. Thereafter, on March 5, 2020, Employer filed a petition to modify Claimant's wage loss benefits (Modification Petition), based on the availability of work within Claimant's physical restrictions. C.R., Item No. 10. Claimant denied that he was offered a job within his physical restrictions and asserted that he remained totally disabled. C.R., Item No. 12.[1]

Employer presented the deposition testimony of Dr. Noble, as well as the deposition testimonies of Renee Wallace (Wallace), a vocational consultant, and Kathleen Berg (Berg), a manager with the Solomon Group (Solomon), a market research firm that offered Claimant a position as a market research associate. Employer also presented testimony from Claimant and his treating physician, Edward Manzella, M.D., who testified on December 12, 2018, and November 14, 2018, respectively, in proceedings conducted by Employer's Civil Service Commission (Commission), the purpose of which was to determine whether Claimant could return to his job as a police sergeant. In support of his petitions, and in defense of Employer's, Claimant testified live before the WCJ on December 23,

---

[1] As part of this litigation, Employer also filed a petition for review of a utilization review (UR) determination. C.R., Item No. 2. Claimant filed a penalty petition, alleging that Employer failed to reimburse his out-of-pocket medical expenses, and a petition to review Employer's December 5, 2019 Notice of Workers' Compensation Benefit Offset, which Employer issued following Claimant's receipt of pension benefits. C.R., Item Nos. 4, 7, 39. The WCJ's disposition of these petitions has not been raised as part of the instant appeal. Therefore, we will not further address these matters, or the evidence relating thereto, except where necessary.

2

2019, and September 2, 2020, and presented Dr. Manzella's June 17, 2020 deposition testimony.

### A. Employer's Evidence

Dr. Noble testified that he is board certified in physical medicine and rehabilitation, electrodiagnostic medicine, and spinal cord injury medicine. C.R., Item No. 47, Noble Dep. at 8. Dr. Noble first examined Claimant on May 15, 2018. *Id.* at 16. Claimant related that he injured his right knee and lower back at work after slipping and falling on stairs. *Id.* at 18. Both injuries required surgical intervention followed with opioid pain medication. *Id.* Claimant advised that he continued to suffer pain when standing or walking and when sitting in one position for more than 10 or 15 minutes. *Id.* at 19. Claimant's lower back pain radiated into his legs, and he experienced numbness in his toes. *Id.* at 20. Dr. Noble observed that Claimant used a cane to walk, and Claimant expressed pain when moving from a standing to seated position or when standing up. *Id.* at 21. Claimant had reduced flexion in his right knee and ankle and when bending forward or to the side. *Id.* at 20-21. He could not bend backward or extend and reported pain with range of motion. *Id.* at 21. Claimant's straight leg test was positive on the left. *Id.*

Based on the results of his physical examination and a review of Claimant's medical records, including diagnostic studies, Dr. Noble diagnosed Claimant with a low back tear or strain, herniated disc at L5-S1 resulting in a lumbar fusion, and a right knee medial meniscus tear. *Id.* at 25. Dr. Noble opined that Claimant had not fully recovered from these diagnoses, and he did not believe Claimant could return to work as a police sergeant. *Id.* at 26.

Dr. Noble's second IME took place on October 15, 2019. *Id.* Claimant's complaints of pain remained the same as from the prior IME. *Id.* at 28. Claimant

3

advised that he could dress himself, although he occasionally needed help putting on socks, and he could transfer to and from a chair or a car. *Id.* Claimant expressed interest in returning to work at an office job, provided he could sit and stand intermittently and change position every 5 to 10 minutes. *Id.* at 29, 32. Dr. Noble noted that Claimant had a spinal cord stimulator inserted after the first IME, which improved some of his pain symptoms; otherwise, Dr. Noble did not observe any substantial change in Claimant's condition from the first IME, which indicated he was stable. *Id.* at 29-30. Dr. Noble reiterated his prior opinion that Claimant had not fully recovered from his work injury, but he felt that Claimant could return to work in a sedentary capacity. *Id.* at 34. Dr. Noble based his opinion on Claimant's ability to see, hear, and speak, to walk with a cane and carry objects in his left hand, and to transfer in and out of chairs and vehicles, and on Claimant's recent medical records that did not contain any findings Dr. Noble considered "totally disabling." *Id.* at 36-37. Claimant's use of a cane to walk did not disqualify him from sedentary work. *Id.* at 38.

Dr. Noble reviewed a job description for a position with Solomon as a market research associate, the duties of which consisted of making telephone calls and documenting telephone conversations. *Id.* at 39. Dr. Noble felt this work accommodated Claimant's physical restrictions, particularly because Claimant did not have to work at a specific location, and he could change positions as needed. *Id.* at 41. While a July 1, 2015 note from Dr. Manzella stated that Claimant was disabled from employment in any capacity, an April 26, 2018 letter from Dr. Manzella to Claimant's legal counsel indicated that Claimant could return to work for Employer in a clerical capacity and that Claimant's physical restrictions did not prevent him from performing "any and all clerical duties." *Id.* at 42-43. During cross-

examination, Dr. Noble agreed that he did not believe Claimant had magnified his symptoms, and he acknowledged Claimant's lifestyle was limited, as he could not perform household chores or activities. *Id.* at 57, 63.

Wallace testified that she is vice president of Catalyst RTW, a vocational services company that specializes in "home-based return-to-work options for injured and disabled workers." C.R., Item No. 41, Wallace Dep. at 7. Following a referral from Employer's workers' compensation insurer, EMC Insurance (Insurer), Wallace conducted a vocational interview with Claimant on February 11, 2020, during which Claimant provided Wallace his educational and employment background. *Id.* at 26-28. Claimant indicated that he needed to change positions frequently and he could only sit for 30 minutes and stand for 45 minutes. *Id.* at 28. Wallace understood that Claimant took prescription medication to treat the symptoms related to his work injury, but that those medications caused no side effects. *Id.* Wallace filled out a questionnaire based on Claimant's responses, which she provided to Claimant and his legal counsel with a request for corrections or additions. *Id.* at 29.

While Wallace did not discuss Claimant's physical limitations during the vocational interview, she understood that Dr. Noble released Claimant to sedentary-duty work, and the market research associate position with Solomon was "very sedentary." *Id.* at 31. Wallace stated she was familiar with the duties required of the market research associate position, as she assisted employees with setting up their equipment and she was present during training sessions. *Id.* at 25. As a result, Wallace felt the position was physically appropriate for Claimant. *Id.* at 31.

The position paid $9.00 per hour for a 40-hour work week, during which Claimant would place telephone calls to businesses or consumers and gather information that he would record on a survey form. *Id.* at 43-45. Claimant had the

5

ability to work at his own pace between the hours of 8:00 a.m. and 9:00 p.m. *Id.* at 44. He would make phone calls using a cordless headset, which would provide Claimant with "complete freedom of movement[,]" and he could sit, stand, or walk while performing his job duties, and take breaks throughout the day, as needed. *Id.* at 45. Wallace understood that Claimant walked with a cane, and therefore he may not want to walk while working. *Id.* at 49. Claimant advised Wallace during the interview, however, that he could work for 30 minutes while seated, then take a break. *Id.* at 63. In a letter dated February 14, 2020, Wallace notified Claimant that an interview with Solomon had been scheduled for February 24, 2020. *Id.* at 36. Claimant submitted an employment application to Solomon prior to the interview. *Id.* at 39.

Wallace testified that, during the initial training period with Solomon, Claimant's wages would be subsidized by Employer's workers' compensation insurer. *Id.* at 10. Thereafter, Solomon would pay Claimant's wages and his employment would be ongoing. *Id.* Wallace stated that the market research associate position is a permanent one, and Claimant would be "an employee of record from day one[.]" *Id.* at 40. Employer's insurance carrier would reimburse Claimant's wages during the initial training period, with Solomon paying Claimant's wages thereafter. *Id.*

During cross-examination, Wallace acknowledged that she intended to refer Claimant to Solomon prior to conducting the vocational interview, provided nothing took place during the interview that would lead Wallace to believe Claimant was not able to perform the market research associate position. *Id.* at 56-57.

Berg testified that she is responsible for interviewing potential new hires referred to Solomon by Catalyst and that she is involved in the hiring decision

6

process. C.R., Item No. 49, Berg Dep. at 9. She advised that any individual hired by Solomon is a Solomon employee, and Claimant would have received his paychecks from Solomon. *Id.* at 10, 27. Berg interviewed Claimant by telephone on February 24, 2020, and, when the interview concluded, she offered him a position as a market research associate, which Claimant accepted. *Id.* at 11-12, 14, 29. Berg confirmed the offer of employment by letter dated February 25, 2020. *Id.* at 29. Claimant was provided the equipment necessary to perform the job duties required, including a telephone headset, and Berg scheduled a training session for March 4, 2020. *Id.* at 30-31. On that date, Berg attempted to contact Claimant through the Solomon equipment and at his personal phone number but was unable to reach him. *Id.* at 30. Based on Claimant's lack of response, and a February 27, 2020 note provided by Claimant's treating physician, Dr. Manzella, stating that Claimant could not work on a full- or part-time basis, Berg assumed that Claimant no longer wanted the position. *Id.* at 30; C.R., Item No. 28.

Berg stated that she supervises Solomon's market research associates and is therefore familiar with the duties and physical requirements of the position. Berg Dep. at 15. A market research associate's duties consist of making phone calls to businesses, conducting surveys, and tracking the results of each phone call, which are then transmitted to Solomon. *Id.* Calls are placed using a headset, which allows the employee flexibility to work wherever he or she chooses. *Id.* at 18. Other than "moving papers around," there is little physical effort required, and an employee can work while standing, sitting, or moving. *Id.* While market research associates are expected to work eight hours each day, calls may be placed at any time between the hours of 8:00 a.m. and 9:00 p.m., which allows for breaks throughout the day. *Id.* at 19. Solomon anticipates that a market research associate will place an average of 20

calls per hour and complete 2 surveys per hour, and Solomon provides all the training for its employees. *Id.* at 20, 23, 27. Berg confirmed that Solomon would be reimbursed for Claimant's wages during his initial training period. *Id.* at 43.

At a December 12, 2018 hearing before the Commission, Claimant testified that he was physically able to resume the duties of a police sergeant. C.R., Item No. 36, Notes of Testimony (N.T), 12/12/18, at 343-44. Claimant testified that, if Employer had offered him the position, he "would already be in uniform . . . ." *Id.* at 344.

Employer also presented the November 14, 2018 deposition testimony of Dr. Manzella, who testified on Claimant's behalf during the disability proceedings before the Commission. C.R., Item No. 40. At Claimant's request, Dr. Manzella evaluated Claimant for the purpose of determining whether he could return to work as a police officer. N.T., 11/13/18, at 33. Based on his assessment, Dr. Manzella opined that Claimant was not permanently disabled and capable of returning to police work in a clerical capacity. *Id.* at 47-48. Dr. Manzella felt that Claimant could sit for prolonged periods of time, provided he was allowed to stand and change position. *Id.* at 49. Claimant could stand, as well, but not for prolonged periods. *Id.* at 50.

### B. Claimant's Evidence

Claimant testified that he sustained a work injury to his right knee and lower back on July 20, 2012, when he slipped and fell on stairs leaving the scene of an investigation. C.R., Item No. 19, N.T., 12/23/19, at 24-25. He began receiving a disability pension in March 2019. *Id.* at 45. Claimant advised that he continues to suffer pain in his right knee when standing and walking, as well as constant lower back pain, which radiates down his legs. *Id.* at 28. Claimant requires the use of a

8

cane to walk. *Id.* Because of the pain associated with his work injury, Claimant must change position frequently. C.R., Item No. 22, N.T., 9/2/20, at 28. Some days, Claimant can sit for 30 to 45 minutes before changing position. *Id.* at 29. At times, he can only sit for five minutes. *Id.* Claimant can stand for brief periods, but he must support his weight with a cane or lean against a counter or furniture. *Id.* at 30.

Claimant stated that he tries to "get up and walk[,]" but otherwise does not engage in much activity or leave the house. *Id.* at 32. He is no longer able to maintain his property or perform chores, such as shoveling snow or pulling weeds. *Id.* at 33. Claimant acknowledged that in early 2018 he talked to Dr. Manzella about returning to work with Employer; however, Claimant does not believe that he would have been able to perform clerical duties, given his need to frequently change positions. *Id.* at 34. Claimant advised that he also has difficulty concentrating. *Id.* at 35. Claimant did not believe he could perform the duties required for the market research associate position with Solomon, "[n]umber one," because the position would require that Claimant fulfill a "quota" of 20 calls per hour. *Id.* at 35-36. He noted that a clerical position with Employer did not require any quotas, only the completion of paperwork. *Id.* at 35. Furthermore, if working from home, Claimant would have to stand and move around, and he would have difficulty standing while using his cane and simultaneously talking on the phone and writing down information. *Id.* at 36. Claimant felt that he was unable to work in any capacity. *Id.* at 37.

During his June 17, 2020 deposition, Dr. Manzella conceded that he evaluated Claimant in 2018 to determine whether he could return to police work and, at that time, he opined in an April 26, 2018 written report that Claimant could perform clerical work for Employer. C.R., Item No. 25, Manzella Dep., 6/17/20, at 26; Item

9

No. 27. Dr. Manzella asserted that, at the time he evaluated Claimant in 2018, he "hop[ed] that" Claimant could return to work but that he did not believe Claimant "would be able to do it." Manzella Dep. at 26. Presently, Dr. Manzella opined that Claimant was completely disabled and incapable of working in any capacity. *Id.* at 27. Claimant's pain level had not changed, despite the implantation of a spinal cord stimulator, and his ability to walk had not improved. *Id.* at 28. Instead, Dr. Manzella felt that Claimant's overall condition had worsened, in part because Claimant had to frequently change position to reduce pain. *Id.* at 29.

After reviewing a job description for the market research associate position with Solomon, Dr. Manzella opined that Claimant would not be capable of performing the duties required. *Id.* at 36. Dr. Manzella's opinion was based on his initial belief that Claimant would perform his work while seated at a desk, which would not accommodate his need to frequently change positions. *Id.* at 36-37. Dr. Manzella also felt that Claimant was at risk of falling if he performed his job duties while standing, as Claimant would use one hand to hold a phone and write down survey responses with the other. *Id.* at 38. He also felt the position would be stressful and mentally taxing. *Id.* at 37.

On cross-examination, Dr. Manzella agreed that Claimant's medical therapy had not impacted his cognitive abilities. *Id.* at 75. Dr. Manzella also conceded that he wrote a letter to Employer in April 2018, in which he stated that Claimant's physical disabilities did not prohibit him from performing clerical duties and that only Employer's "unwillingness to have [Claimant] perform a light-duty job" prevented Claimant from returning to work for Employer. *Id.* at 75-76. Dr. Manzella stated that he believed Claimant to be capable of such work "[a]t that time[.]" *Id.* at 76-77. Dr. Manzella conceded that he made a contrary statement

10

during direct examination, asserting that in 2018 he did not "truly believe" Claimant was able to perform clerical work. *Id.* at 76. Dr. Manzella agreed that, beyond some worsening in Claimant's gait, there were no changes in Claimant's clinical findings from April 2018 and February 2020, the period in which Dr. Manzella initially opined that Claimant could work a clerical job but subsequently provided Claimant a note that he could not work in any capacity. *Id.* at 79. Ultimately, Dr. Manzella confirmed that he believed Claimant could sit in a chair, changing positions as needed, use a cell phone and other technology, write, and walk a short distance while carrying items in one hand. *Id.* at 81-82.

### C. WCJ's Decision

In a decision circulated on November 30, 2020, the WCJ credited Claimant's testimony as to his ongoing symptoms from the work injury. C.R., Item No. 14, Finding of Fact (F.F.) No. 19(a). Claimant's testimony that he could not perform the job offered by Solomon was rejected, however, in light of his 2018 testimony before the Commission that he would "already be in uniform," without qualification, if Employer offered him a position with the police department. *Id.* The WCJ rejected Dr. Manzella's testimony as not credible, as Dr. Manzella's 2020 testimony that he did not believe Claimant would be able to return to work for any length of time conflicted with statements in his April 26, 2018 report that Claimant was capable of performing a light duty, clerical position with Employer. F.F. No. 19(b).

The WCJ found Dr. Noble's testimony and opinions competent and credible. F.F. No. 19(g). Dr. Noble agreed that Claimant continued to suffer symptoms from his work injury but opined that Claimant could perform sedentary work. *Id.* That Claimant's physical issues in 2018, and the medications he took to address them, were "very similar" to Claimant's condition in 2020, supported Dr. Noble's

11

testimony that Claimant's condition was stable and had not changed substantially. *Id.*

The WCJ accepted Wallace's testimony regarding the physical requirements and job duties for the market research associate position with Solomon as fact, as well as her testimony that an interview with Claimant had been scheduled by Solomon. F.F. No. 19(d). The WCJ noted that Wallace's testimony was corroborated by Berg, whom the WCJ also deemed credible. F.F. No. 19(d)-(e). Claimant presented no credible evidence to dispute Berg's testimony that Claimant was referred for an interview with Solomon, that he was offered the position, and that he was scheduled to start training on March 4, 2020. F.F. No. 19(e). The WCJ accepted Berg's testimony that she believed Claimant was no longer interested in the position with Solomon, as her testimony was supported by Dr. Manzella's February 27, 2020 note indicating Claimant was unable to work. *Id.* Based on these findings, the WCJ concluded that Employer sustained its burden of demonstrating that Claimant could return to work and that Employer was entitled to a modification of Claimant's wage loss benefits, effective March 4, 2020. C.R., Item No. 14, Conclusion of Law (C.L.) No. 12.

Claimant appealed to the Board, arguing in relevant part that the WCJ's decision "was erroneous, [and] not supported by the substantial evidence of record," and that Employer did not meet its burden of proof on the Modification Petition. C.R., Item No. 15. The Board disagreed, concluding that Employer sustained its burden of demonstrating Claimant's earning power had increased through the credible testimony of Wallace and Berg that Claimant was offered a specific job within his physical, intellectual, and vocational abilities. C.R., Item No. 16 at 6. Further, the WCJ credited Dr. Noble's unequivocal medical testimony that Claimant

12

was physically capable of performing the market research associate position with Solomon, and discredited Dr. Manzella's testimony to the contrary. *Id.* at 6-7. Accordingly, the Board affirmed the WCJ. *Id.* at 10. This appeal followed.[2]

## II. Issues

On appeal, Claimant argues that the WCJ erred in modifying his wage loss benefits because the market research associate position with Solomon failed to consider Claimant's need for a cane while walking and standing, and because the position was only available for a short period of time.

## III. Discussion

An employer seeking to modify a claimant's benefits under Section 306(b)(2) of the Workers' Compensation Act (Act)[3] must either offer the claimant a specific, available job that he can perform or establish the claimant's earning power through expert opinion evidence. *Select Sec., Inc. v. Workers' Comp. Appeal Bd. (Kobrin)*, 901 A.2d 1129, 1132 (Pa. Cmwlth. 2006). The employer bears the burden of proving that suitable employment is available within the claimant's medical restrictions. *Furnari v. Workers' Compensation Appeal Bd. (Temple Inland)*, 90 A.3d 53, 71 (Pa. Cmwlth. 2014). A position is "actually available" if it can be performed by the claimant, considering his physical restrictions and limitations, age, intellectual capacity, education, previous work experience, and other relevant considerations. *Id.* Instantly, we are only concerned with whether the market research associate position with Solomon was not actually available given Claimant's need to walk or

---

[2] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830, 838 (Pa. 2013).

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512(2).

stand with the aid of a cane, as Claimant has not otherwise argued that he cannot perform the duties of that position.

Claimant argues that the WCJ erred in modifying his workers' compensation benefits because the WCJ failed to consider Claimant's need for a cane when concluding that Claimant could perform the market research associate position with Solomon. Claimant notes that Dr. Noble agreed Claimant used a cane to walk and stand, and he asserts that both Wallace and Berg acknowledged during their testimony that Claimant would be unable to perform the duties of market research associate while using a cane. Claimant contends that the WCJ failed to explain how Claimant's reliance on a cane to stand and walk would impact his ability to perform the job with Solomon. In the absence of such an explanation, Claimant argues that the WCJ's decision is not sufficiently reasoned, as required by Section 422(a) of the Act, 77 P.S. § 834.

When concluding that Employer met its burden of proving its entitlement to a modification of Claimant's wage loss benefits, the WCJ relied on the credited testimony of Wallace and Berg concerning the physical requirements of the market research associate position with Solomon and Dr. Noble's credible testimony that Claimant was able to perform the duties of the job. The WCJ rejected Claimant's testimony, and that of Dr. Manzella, that Claimant could not work in any capacity and was totally disabled.

The WCJ has complete authority over questions of credibility, conflicting medical evidence, and evidentiary weight, and he is free to accept, in whole or in part, the testimony of any witness, including medical witnesses. *Ingrassia v. Workers' Comp. Appeal Bd. (Universal Health Servs., Inc.)*, 126 A.3d 394, 399 n.5 (Pa. Cmwlth. 2015). Section 422(a) does not permit a party to challenge or second-

14

guess the WCJ's reasons for credibility determinations. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006). Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal. *Green v. Workers' Comp. Appeal Bd. (US Airways)*, 28 A.3d 936, 940 (Pa. Cmwlth. 2011). Moreover, as long as the findings of the WCJ are supported by substantial evidence, they must be accepted as conclusive on appeal. *Newcomer Prods. v. Workers' Comp. Appeal Bd. (Irvin)*, 826 A.2d 69, 74-75 (Pa. Cmwlth. 2003). It does not matter that the record supports a contrary finding; the pertinent inquiry is whether there is substantial evidence to support the findings made. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1988).

Section 422(a) of the Act requires a WCJ to issue a "reasoned decision containing findings of fact and conclusions of law" that "clearly and concisely states and explains the rationale" behind the decision. 77 P.S. § 834. The WCJ "shall specify the evidence upon which the [WCJ] relies" and the reasons for accepting it. *Id.* A WCJ's decision is "reasoned" under Section 422(a) "if it allows for adequate review by the appellate courts under applicable review standards." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003).

We disagree with Claimant that the WCJ did not consider Claimant's use of a cane when rendering his decision to modify Claimant's wage loss benefits based on the availability of a position with Solomon as a market research associate. The WCJ explicitly recognized in his findings that Claimant walked with the support of a cane. F.F. No. 7(l). Furthermore, Wallace and Berg testified that the position with Solomon is sedentary and does not require that Claimant walk or stand while performing any of the required job duties. Rather, Claimant could sit while placing

15

calls and change position when necessary or take a break. Dr. Noble reviewed the job description for the position with Solomon and opined that the duties of a market research associate fell within Claimant's physical restrictions. While the WCJ credited Claimant's testimony regarding his ongoing symptoms, he explicitly discredited Claimant's testimony that he could not perform the duties of the position offered. The WCJ's reasoning was based in great part on Claimant's testimony from 2018 that he could return to work for Employer, without qualification, which conflicted with his testimony before the WCJ in 2019 and 2020 that he could not work in any capacity. *Id.* The WCJ also rejected Dr. Manzella's testimony that Claimant was completely disabled, based on Claimant's prior testimony from 2018 that he could perform clerical work. In rejecting this testimony, the WCJ also considered Dr. Noble's opinion that Claimant's condition remained relatively unchanged from May 15, 2018, to October 15, 2019, the dates of Dr. Noble's IMEs. While Dr. Manzella initially testified that Claimant's condition had worsened, due to his need to frequently change position, he subsequently agreed during cross-examination that Claimant's clinical findings had not changed from April 2018 through February 2020, aside from some worsening in Claimant's gait. Thus, Dr. Manzella's testimony corroborates Dr. Noble's opinion that Claimant's condition was stable.

Regarding Claimant's contention that Wallace and Berg agreed that Claimant could not perform the duties of the market research position while using a cane, we disagree, as Claimant mischaracterizes their testimony. Wallace agreed that "it might be a little difficult" to work in a standing position while using a cane; however, she also testified that Claimant indicated during his interview that he could sit for a 30-minute period, during which he would work and thereafter take a break. C.R.,

16

Item No. 41, Wallace Dep. at 63. Berg noted that Claimant "may have said that he used a cane" during the February 24, 2020 interview, but at no point did she testify that the duties of market research associate could not be performed while using a cane. C.R., Item No. 49, Berg Dep. at 45.

The WCJ may not have explicitly found that Claimant could perform the duties of a market research associate while using his cane. Based on the sedentary nature of the job, however, and Claimant's ability to perform those duties while sitting, such a finding appears to be implicit. We therefore reject Claimant's argument that the WCJ's decision failed to consider his need to use a cane, or that the position with Solomon did not accommodate Claimant's physical limitations. We also reject Claimant's argument that the WCJ's decision was not reasoned for purposes of Section 422(a) of the Act, as the WCJ detailed the evidence upon which he relied and thoroughly explained the reasoning behind his credibility determinations.

Next, Claimant argues that the WCJ erred in modifying his wage loss benefits, as there was no evidence to suggest that the job with Solomon was available beyond the initial training period during which his wages would be funded by Employer's workers' compensation insurer. Claimant suggests that, at most, his benefits should have been temporarily modified during the training period. Employer argues that Claimant has waived this issue, as he did not raise it before the Board.

We agree with Employer that Claimant has raised this issue for the first time on appeal to this Court, as his appeal to the Board merely alleges that the WCJ's decision was "erroneous, [and] not supported by the substantial evidence of record," and that Employer "did not meet its burden of proof on" the Modification Petition. At no point does he suggest that the WCJ erred in modifying his wage loss benefits

17

because the market research associate position with Solomon was temporary or only funded for a limited period of time. Rule 1551(a) of the Rules of Appellate Procedure[4] provides that only questions raised before the government unit shall be heard or considered on appeal, with limited exceptions that are not implicated here. It is well established that an issue not raised before the Board cannot be raised before this Court for the first time on appeal. *Hall v. Workers' Comp. Appeal Bd. (Am. Serv. Grp.)*, 3 A.3d 734, 744 n.18 (Pa. 2010).

Even if Claimant's general allegations of error sufficiently raised this issue before the Board, his argument is not supported by the evidence presented. While Berg testified that Employer's workers' compensation insurer would reimburse Solomon the amount of Claimant's wages during the initial training period, Wallace credibly testified that Solomon would pay Claimant's wages thereafter, and Claimant's employment would be "ongoing." Wallace Dep. at 10. Wallace stated that the market research associate position was a permanent one and Claimant would be Solomon's employee "from day one[.]" *Id.* at 40. Claimant's primary objection to the Solomon job, based on his testimony, appears to be rooted in Solomon's "quota" requirement that Claimant place 20 telephone calls and complete 2 surveys each hour, and not the allegedly temporary nature of the job. N.T., 9/2/20, at 35. Claimant presented no evidence to contravene the credited testimony of Wallace and Berg. As a result, there is no evidentiary basis for Claimant's argument that the job with Solomon was only temporarily available.

## IV. Conclusion

Employer presented substantial evidence to sustain its burden of demonstrating that Claimant's earning power had increased, based on the

---

[4] Pa.R.A.P. 1551(a).

availability of a job within Claimant's physical, intellectual, and vocational abilities. Accordingly, we affirm the Board.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Salvatore Taibi,      :
    Petitioner   :
          :
 v.        : No. 1017 C.D. 2021
          :
Borough of Slatington and Employers :
Mutual Casualty Company (Workers' :
Compensation Appeal Board),  :
    Respondents :

# O R D E R

AND NOW, this 3rd day of March, 2023, the August 25, 2021 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge